JOHN VOGT ET AL. *v.* JAMES G. TICKNOR.

Where one party claims land under a conveyance from the former owner, and the other party claiming under the subsequent levy of an execution, seeks as a creditor of the former owner to impeach the conveyance on the ground of fraud, the judgment, on which the execution issued, is competent evidence of the debt.

Where the return of an extent adopts the appraisement of the premises as part of the return, and the appraisers, after describing a tract of land, say they have appraised an *undivided fifth part* of the tract at $448.72, and set off the *one fifth part* in satisfaction of the execution, if the officer, after adopting and setting out the appraisement, say in his return that the appraisers set off *the said tract of land* at $448.72; in construing the description of the premises, the whole return, including the appraisement, will be considered together, and it will be intended that the one fifth part, appraised and set off by the appraisers, was set off by the extent.

Where the husband without other consideration conveys land in trust that it shall be conveyed to his wife, and the trustee without consideration conveys to the wife accordingly, the conveyance to the wife is "occasioned by the payment or pledge of the property of the husband" within the meaning of those terms as used in the proviso to the statute which authorizes the wife to hold to her separate use property conveyed to her during marriage.

In such case the wife will not hold to her separate use, and her deed will not convey the land without joining the husband.

If an execution is issued by mistake against the defendant by a wrong christian name, after a levy of the execution, the execution and return may be amended so as to agree with the judgment.

Where a creditor seeks to avoid a conveyance on the ground of fraud, the recital in the deed is not competent evidence of a consideration.

WRIT of entry for land in Lebanon. Plea, the general issue.

The plaintiffs claimed title under levies of three executions issued on judgments recovered by them in this court against Daniel S. Hough, at the September Term, 1863; one for $417.27, debt, and $15.43, costs; one for $413.38, debt, and $15.43, costs; and the third for $236.74, debt, and $15.43, costs; all levied March 12, 1864.

These judgments were founded on three several judgments recovered by the plaintiffs against Daniel S. Hough, in New York, after service on him, in that jurisdiction.

Herman Cruger testified that he was book-keeper for the plaintiffs in New York; that the claim for goods sold and one claim for money lent to Daniel S. Hough, which were the foundation of the judgments in New York, were entered by him in the books of the plaintiffs, in the regular course of the plaintiffs' business as their account with Daniel S. Hough; that he saw Hough once in the plaintiffs' store, but that he did not himself see any goods sold or any money lent to Hough, and never knew of any contract made by Hough for the purchase of goods; that he made these charges by direction of other clerks and salesmen in the store, in the regular course of his business and in the customary way, but had no personal knowledge of any sale made to Hough, or of any money lent to him.

The defendant objected that there was no competent evidence to prove that the plaintiffs were creditors of Hough; but the court ruled that the judgments themselves connected with the testimony of Cruger, were competent evidence from which the jury might find that the judgments were recovered for just debts from Hough to the plaintiffs, to which the defendant excepted.

In the levy of the execution for $417.27 and costs, the appraisers say that, having examined a tract of land "bounded easterly on Academy street," &c., (setting out the tract by metes and bounds,) they are of opinion that the tract cannot be divided and set off without greatly impairing the value of the whole; that one fifth part of the said real estate is of the value of $448.72, and they set off one fifth part in satisfaction of the execution. The officer says in his return that the appraisers *set off the above described tract of land* at $448,72, and the said appraisers set off the same tract of land by metes and bounds as aforesaid at that sum in satisfaction of the execution. The defendant objected that the return did not show that the same premises, which were appraised, were set off by the sheriff. The court overruled the objection, to which the defendant excepted.

The execution for $236.74 and costs was levied in the same manner

on one undivided eighth part of the same premises, subject to same objection of the defendant.

The execution for $413.38 and costs was issued by mistake against John S. Hough instead of Daniel S. Hough; the defendant objected that the land of Daniel S. Hough could not be taken on an execution issued against John S. Hough; the court sustained the objection, whereupon the plaintiff moved that the clerk have leave to amend the execution, and the sheriff his return, by inserting the name of Daniel S. Hough instead of John S. Hough. The question whether such an amendment can be made is reserved and transferred. Copies of the levies may be referred to on the hearing.

The premises described in the levies are the same that are demanded in the plaintiffs' writ.

The defendant claimed title under the deed of Lucretia S. Hough to himself, dated, acknowledged and recorded, March 1, 1862.

It appeared that Daniel S. Hough was the owner of the premises previous to, and down to, the 13th of April, 1861, when he conveyed them to Julius A. Durkee by deed of that date, acknowledged June 4, and recorded June 7, 1861. The consideration named in the deed was $2000, paid by Durkee to Daniel S. Hough. The deed was in the common form with covenants of warranty. On the same day, by deed of the same date, acknowledged June 4, 1861, and recorded March 1, 1862, Julius A. Durkee conveyed the premises to Lucretia S. Hough, then and still the wife of Daniel S. Hough. The consideration named in the last named deed was $2000, paid by Lucretia S. Hough to Durkee. The evidence tended to show that Daniel S. Hough, at the time of his conveyance to Durkee, was in debt and in embarrassed circumstances.

The court ruled that, as against creditors seeking to avoid the deed from Daniel S. Hough to Durkee, and the deed from Durkee to Lucretia S. Hough, on the ground of fraud, the consideration named in the deeds was not evidence that the money was paid, to which the defendant excepted.

The court also ruled that if the deed from Daniel S. Hough to Durkee, and the deed from Durkee to Lucretia S. Hough were without consideration, the conveyance to Lucretia S. Hough would be occasioned by the payment or pledge of the property of her husband within the meaning of the proviso in the first section of the act entitled "An act in relation to married women," passed July 4, 1860, and that consequently in such case her deed, without being joined by her husband, would not convey the land, to which the defendant excepted.

A verdict was thereupon taken by consent for the demandants, subject to the opinion of the court.

*Blaisdell & H. Hibbard*, for the defendant.

*Morris & E. D. Rand*, for the plaintiffs.

PERLEY, C. J. The plaintiffs claimed the demanded premises under

the levy of several executions issued on judgments recovered by them against Daniel S. Hough. The defendant claimed under a prior conveyance from Hough to Julius A. Durkee, which the plaintiffs sought to impeach as fraudulent against the creditors of Hough, and relied on their judgments against Hough as evidence of his debt to them; and the question on this part of the case is, whether the judgments were competent evidence for that purpose without proving the debt independent of the judgments. There was no evidence to impeach the judgments; they were regularly rendered in this jurisdiction and conclusive as between the parties to them; were they competent evidence tending to prove the debt until something was shown to the contrary?

The objection to the admission of the judgments is that they were *inter alios,* and therefore could not affect this defendant and those under whom he claims.

That objection would equally apply to any admission or any security on which the judgments were founded. If, for instance, the judgments were rendered on promissory notes, producing and proving the notes would only remove the objection one step farther off, for the admissions and contracts of the debtor are as much *inter alios* as the judgment. No admission, contract, or security would be more formal and solemn than the judgment.

It is undoubtedly an elementary rule that "a transaction between two parties ought not to *injure* another;" *res inter alios acta alteri nocere non debet.* And it may perhaps be taken for a uniform rule that no one is *concluded* by a judgment, or other act or transaction, to which he was not actually, or in contemplation of law, a party.

But it is not inconsistent with the spirit of the general rule, nor with the terms, in which it is formally enunciated, that in certain circumstances and for certain purposes, a judgment or other transaction should be taken for such as it purports to be, even as to third persons, till something is shown to the contrary. Where the relation of the parties to each other and the usual course of the business raise a strong presumption that the transaction is real and not fictitious, allowing it to be taken for what it purports to be, cannot be a hardship on third persons, if they are permitted to impeach it by evidence. The act is not to *injure* third persons; *nocere non debet;* and in cases such as have been supposed it cannot be justly said that third persons are injured, if the act is allowed to stand till something is shown to throw suspicion on its apparent reality and fairness.

Now it is not a usual and ordinary thing that a man admits a debt, allows a judgment to be recovered against him, and property to be taken as his to satisfy it, by collusion and without consideration.

Then, again, it is contrary to common experience that men make conveyances to defraud their creditors, and afterwards collude with others to suffer unfounded judgments in order to defeat their prior fraudulent conveyances; and when such an exceptional case arises, it will be quite safe to leave the prior grantee to impeach the judgment by showing that it was collusive and not for a real debt, as we understand was done in *Pomroy* v. *Bailey,* 43 N. H. 118.

It is also material to consider what the nature of the injury is, to which the prior grantee is exposed by permitting a judgment to be taken as evidence of a debt due from his grantor. He is not a fair purchaser, who is in danger of losing the land that he has bought and paid for ; all his risk is that he may not be allowed to retain the land for which he paid nothing, or which he took in fraud of the grantor's creditors.

Where one alleges that he is a creditor of the ‧ vendor, and as such seeks to avoid the conveyance as fraudulent, and produces a regular judgment against the vendor and a levy on the land, it is, we think, practically safe to take it for granted till something is shown to the contrary, that the judgment is for a real debt, and not fictitious and collusive. The presumption from the usual course of the business, the solemnity of the judgment, the levy on the land, and all experience in such cases are a sufficient guaranty that no injustice will be done to a prior purchaser by requiring him to attack the judgment, if he supposes it to be unfounded and without consideration. Our experience leads us to expect the fraud and collusion between the vendor and vendee, and not between the vendor and a subsequent judgment creditor.

An examination of the authorities leads us to the same conclusion, to wit, that a judgment is evidence of a debt in favor of one who undertakes as a creditor to impeach a conveyance on the ground of fraud.

*Lake* v. *Billers*, 1 Ld. Raymond 733, was trespass against the sheriff for goods taken ; he justified under a *levari facias;* the plaintiff claimed under a prior execution and judgment, but fraudulent. It was ruled that the defendant could not rely on the execution, but must produce a copy of the judgment. There is no intimation that the defendant was obliged to go behind the judgment and show on what consideration it was rendered. In Buller's Nisi Prius, 91 and 234, *Lake* v. *Billers* is cited for the rule that "if trespass be brought against a sheriff who has levied goods by virtue of a *fi. fa.* against the plaintiff, he need not show the judgment ; but if the goods were the goods of J. S., and the plaintiff claim them by a prior execution or sale that was fraudulent, the sheriff must show a copy of the judgment." That is to say, if the execution was against the plaintiff himself, it is sufficient for the sheriff to show the execution ; but if he would put himself in the place of a creditor, and impeach a prior title on the ground of fraud, he must produce the judgment. In *Acworth* v. *Kempe,* Douglas 40, the sheriff justified taking of the goods under two executions, in one of which he produced the judgment, and in the other he did not. The plaintiff claimed under a prior sale from the defendant in the former suits. Eyre, Baron, directed a verdict for the plaintiff in the case where the judgment was not produced, and in the other case where the judgment was produced, left it to the jury to find whether the prior sale was fraudulent. On hearing the motion for a new trial, Buller, J., recognized the distinction made by Eyre, Baron, on that question. So ‧ in *Martin* v. *Podger*, 2 Blackstone's Rep. 701, it was held, as in *Lake* v. *Billers*, that in actions by third persons for selling goods on a *fi. fa.*, a copy of the judgment must be given in evidence by the defendant ; and *Glazier* v. *Eve*, 1 Bing. 209, is to the same point. In these cases it was held

that as to third persons it was not enough to produce the execution in order to prove the debt, but the party relying on the debt must produce a copy of the judgment.  There is no intimation that he was obliged to go behind the judgment and show on what consideration it was rendered; and the inference from these authorities is irresistible that in England a judgment is evidence of a debt, where one seeks to defeat a prior title on the ground that it was fraudulent as to creditors.

In *Damon* v. *Bryant*, 2 Pick. 401, 413, *Parker, C. J.*, says; "Where the goods taken are claimed by a person, who was not a party to the suit, and he brings trespass, and his title is contested on the ground of fraud, a judgment must be shown if the officer justifies under an execution, or a debt, if under a writ of attachment, because it is only by showing that he acted for a creditor that he can question the title of the vendee."  That is to say, he must prove that he acts for a creditor; and this he does where he acts under an execution by proving the judgment, and where he justifies under mesne process before judgment by proving the debt in another way.  And in a series of decisions it has been held in Massachusetts that a judgment against a vendor is evidence in favor of a creditor who seeks to impeach the sale on the ground of fraud. *Pierce* v. *Jackson*, 6 Mass. 243; *Reed* v. *Davis*, 5 Pick. 388; *Damon* v. *Bryant*, 2 Pick. 413; *Goodnow* v. *Smith*, 97 Mass. 69.  In Vermont it would seem that a judgment in the creditor's favor is *prima facie*, though not conclusive, evidence of a debt due from the grantor in a suit against the grantee. *Church* v. *Chapin*, 35 Vt. 231.  In that case, *Peck, J.*, delivering the opinion of the court says: "A judgment in his favor against the grantor is not conclusive against the grantee, who is no party to it.  He may, as a general rule, show that the judgment was collusive, and not founded on an actual indebtedness or liability."  And the same rule is laid down in *Gregg* v. *Brigham*, 1 Hill (S. C.) 299.

In this State it has been held that a judgment with the notes, on which it is founded, is *prima facie* evidence of a debt in favor of one who seeks to avoid a prior conveyance as a creditor of the grantor on the ground of fraud. *Jenness* v. *Berry*, 17 N. H. 549.  Where a judgment is founded on promissory notes, the notes are filed with the record of the judgment, and easily produced with the judgment.  But producing the notes has no tendency to remove the objection that the judgment is *inter alios*, and it is not the notes that the law regards as evidence of the debt; for before judgment, though the execution of the notes declared on is admitted by rule of court, an officer, who serves the mesne process, cannot show that a prior conveyance was fraudulent by mere production of the notes; the notes are not evidence for him of the debt. *Sanford Man. Co.* v. *Wiggin*, 14 N. H. 441.

In *Nichols* v. *Day*, 32 N. H. 133, it was decided that where an administrator applies for license to sell land which has descended to the heir, to pay a judgment recovered for a debt due from the estate, the judgment is presumptive evidence of the debt as against the heir.  In such case the heir is no party to the judgment against the administrator, and the claim to have the land which has descended to the heir, applied

to pay the debt, is in direct conflict with his interest; yet the judgment is presumptive evidence of the debt against the heir in favor of the administrator who claims the land to be applied in satisfaction of the judgment. In the present case the plaintiffs seek to satisfy a debt due from the vendor out of his land, and offer a judgment against the vendor as evidence of the debt. In *Nichols* v. *Day* the administrator sought to satisfy a debt due from the estate out of land that had descended to the heir, and offered a judgment against the estate as evidence of the debt. Neither the heir nor the vendee was party to the judgment offered as evidence against him. I can see no difference in principle between the two cases. If the judgment is to be regarded as evidence of the debt in one case, there is no reason why it should not be in the other.

Our statutory provisions for the levying of executions on property attached in mesne process, evidently contemplate that the judgments are to be taken as *prima facie* evidence of the debt against subsequent parties. The prior judgments may be impeached for fraud. *Pomroy* v. *Bailey*, 43 N. H. 118. But the direction of the statute is positive that, where there are attachments in mesne process, the executions after judgments are recovered shall be levied in the order in which the attachments are made. Gen. Stats. 441, sec. 7. A subsequent attaching creditor is no party to a prior judgment; and if he should levy his execution on the same land, he might, on the principle here asserted for the defendant, require the prior judgment creditor to go behind his judgment and show in the outset that it was for a real debt. But the law is held otherwise. *Damon* v. *Bryant*, 2 Pick. 411, cited and approved in *Sanford Man. Co.* v. *Wiggin*, 14 N. H. 441, 448. And our practice of admitting subsequent attaching creditors to defend prior suits stands on the ground that a prior judgment is evidence of a debt against the subsequent creditor. No distinction in principle is perceptible as to the effect of a judgment between two attaching creditors, who seek to satisfy their debts by a levy on the same property, and a case like the present, where one party claims the land under a deed from the former owner, and the other under a judgment and levy as a creditor of the vendor.

In Cowen & Hill's Note to 2 Phillips' Ev. 173, the doctrine on this point is laid down as follows: "So a judgment is evidence in favor of a creditor seeking to avoid a sale by his judgment debtor as fraudulent. While it concludes the debtor as to the indebtedness, it is *prima facie* evidence against the alleged fraudulent vendee, who may in turn impeach the judgment as collusive in respect to himself."

In some cases it might not be difficult for a creditor, who had obtained a judgment for his debt, to go behind the judgment and prove his debt by independent evidence. But where, as in this case, the judgment is for goods sold at different times, or for any other cause of action which requires the judgment creditor to prove his debt by parol evidence of numerous items and disputed facts, the difficulty and hardship would be great, if, after obtaining judgment against his debtor, he was obliged to establish his claim again in order to impeach a fraudulent conveyance. The question might be raised after long possession under his levy, when

the evidence of his debt was lost, and the proof would be attended with far greater difficulty than in a suit against the debtor himself; for all admissions and acknowledgments of the debtor would be incompetent as being *inter alios.* Suppose these plaintiffs had entered and held under their levy for fifteen or eighteen years, and the defendant after such a lapse of time had set up a claim to the land under his deed, it is easy to see what difficulties the plaintiffs would meet in proving their debt otherwise than by their judgment.

We come to the conclusion that the ruling of the court on this point was correct; that the judgment was competent evidence of the debt.

It is objected that in levying one of the executions the officer, as appears by his return, did not set off the same premises that were appraised. The appraisement is in this case referred to in the return and adopted as part of it. The appraisers say that they appraised one undivided fifth part of the tract described at $448.72, and they set off one undivided fifth part in satisfaction of the execution; and the officer says in his return that the appraisers set off the above described tract of land at $448.72. If the description in the return of an extent be sufficient to show with reasonable certainty what premises were intended to be set off, it will be sufficient though incorrect and contradictory in some particulars. *Morse* v. *Dewey,* 3 N. H. 535; *McConnihe* v. *Sawyer,* 12 N. H. 396; *Lyford* v. *Thurston,* 16 N. H. 399; *Smith* v. *Knight,* 20 N. H. 16; *Waterhouse* v. *Gibson,* 4 Greenl. 230; *Chappell* v. *Hunt,* 8 Gray 427. And in giving a construction to the return all parts of it are taken together and the intention inferred from the whole, as in case of the description in a deed.

The appraisers appraised and set off one undivided fifth part of the tract. This appears by the return, which adopts the appraisement. What was in fact appraised and set off is quite clear upon the face of the return. We must understand that the officer intended to follow the appraisal and do his duty by setting off what was appraised. The intention gathered from the whole return is too plain for doubt, that the officer meant to set off what was appraised and set off by the appraisers; and that intention appearing on the return must govern the construction of the description. We think that the same premises were set off by the officer that were appraised by the appraisers; that is to say, an undivided fifth part of the tract.

The statute of 1846, which enabled married women in certain cases to hold property to their separate use without the intervention of trustees, provided that "nothing therein contained should be construed to empower any husband to convey any of his property to his wife in any other manner or with any other effect than if the same had not been passed." By the statute of July 4, 1860, "every married woman shall hold to her own use, free from the interference or control of her husband, all property inherited by, bequeathed, given, or conveyed to her, provided such conveyance, gift, or bequest is not occasioned by payment or pledge of the property of the husband."

The general object of the provisoes in both these statutes was doubtless the same; to prevent the husband during marriage from conveying

his own property to the wife to be held by her to her separate use, and to limit the operation of the statutes to cases where property came to the wife during marriage from other parties than the husband. But under the statute of 1846, by a circuity such as was used in the present case, the husband might transfer his property to his wife, and to prevent that from being done indirectly which the former statute forbids to be done directly, the statute of 1860 uses terms evidently intended to embrace all cases where the effect of the transaction would be to transfer the property of the husband to the wife to be held to her separate use. Though the conveyance or gift comes to the wife directly from other parties, yet if it is occasioned by the payment or pledge of the husband's property, the case is not within the statute, and the property is not held to her sole and separate use. The language used was, we think, intended to be broad enough to accomplish the general object of the provision, which was to prevent the husband during the marriage from transferring his property by any means, direct or indirect, to his wife to be held to her separate use. Here Durkee conveyed the land to the wife. How was he *paid* for it? By the husband's property in the land. There was no other consideration. The conveyance was *occasioned* by the payment of the husband's property in the land to Durkee. There was no other payment.

One object, if not the sole object, of this proviso was to prevent the husband from placing his property in the hands of the wife to prevent its being taken for his debts. The intention, we think, was by using general and comprehensive terms to embrace all cases where the effect of the transaction, whatever machinery might be used for the purpose, would be to put the husband's property in the hands of the wife in fraud of his creditors : and the ruling of the court on this point was correct.

It is extremely well settled that the recital in a deed, which is impeached by a creditor of the grantor on the ground of fraud, is not evidence of a consideration. *Kimball* v. *Fenner*, 12 N. H. 252 ; *Langley* v. *Berry*, 14 N. H. 82 ; *Belknap* v. *Wendell*, 21 N. H. 175 ; *Ferguson* v. *Clifford*, 37 N. H. 87, 97 ; *Prescott* v. *Hayes*, 43 N. H. 593.

The case of *Whittier* v. *Varney*, 10 N. H. 291, is decisive of the point that the execution and return may be amended so as to agree with the judgment ; and that when the amendment is made it will relate to the time of the levy, and the amended return have the same operation as if it had been so made originally. The amendment may be made, and, when it is made, there should be

*Judgment on the verdict.*